UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CURTIS JOHNSON, | Case No. 3:10-cv-402 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING; (2) REMANDING TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) CLOSING THIS CASE**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff not disabled within the meaning of the Social Security Act and, therefore, unentitled to disability income benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") 13-22).

## I. PROCEDURAL HISTORY

Plaintiff Curtis Johnson initially filed applications for DIB and SSI in July 2007, alleging a disability onset date of March 10, 2007. (Tr. 13). Plaintiff's impairments include a history of right rotator cuff tear with residuals of surgery, arthritis of the bilateral knees, lumbar degenerative disc disease, radiculopathy, borderline obesity, and a history of remote right wrist surgery. (Tr. 15).

Plaintiff's claims were initially denied on September 14, 2007, and again following a request for reconsideration. (Tr. 13, 60-85). In March 2008, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 86-88). That hearing was held before on October 13, 2009. (Tr. 13, 27-59). Plaintiff testified at the hearing. (Tr. 13, 32-51). Also, a vocational expert ("VE"), Mark Pinti, was present and testified at the hearing. (Tr. 13, 25-29).

On November 3, 2009, the ALJ entered her decision finding Plaintiff not disabled. (Tr. 13-22). The ALJ's "Findings," which represent the rationale of her decision, are as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 10, 2007, the alleged onset date (20 CFR 404.1571, *et seq*, and 416.971, *et seq*).

3. The claimang has the following severe impairments: history of right rotator cuff tear with residuals of surgery, sarthritis of the bilateral knees, lumbar degenerative disc disease with multi-level spondylosis and disc bulge at L4-5 with some nerve root impingement and radiculopathy, borderline obesity, and history of remote right wrist surgery (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he must be permitted to alternate his position between sitting and standing at 15-minute

> intervals, is precluded from operation of foot controls, should not climb ladders, ropes, or scaffolds, but may occasionally climb ramps and stairs, may occasionally stoop, kneel, crouch, crawl, and perform overhead reaching on the right, is limited to frequent fingering with the right hand, should not operate vibrating tools with the right hand, and, secondary to pain and the effects of medication, is further limited to simple, routine, and repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 22, 1960 and was 46 year old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Claimant has not been under a disability, as defined by the Social Security Act, from March 10, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15 - 21). In sum, the ALJ concluded that, "[b]ased on the application for a period of disability and disability insurance benefits protectively filed on July 2, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Tr. 21). That decision became Defendant's final determination upon denial of review by the Appeals Council in a decision dated September 20, 2010. (Tr. 1-5).

Plaintiff contends that the ALJ erred in her evaluation of his pain and credibility in forming her opinion concerning his residual functional capacity. (Doc. 8). Plaintiff also argues that, at a minimum, a remand is required pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of purportedly new evidence dated October 31, 2009, and not received by Plaintiff's attorney until after the ALJ issued her decision. (Doc. 8).

## II. FACTUAL BACKGROUND

At the time of Plaintiff's alleged onset of disability, he was 46 years old, *i.e.*, a younger person under the Social Security Act. (Tr. 20). While the record before the Court reveals a number of impairments, at issue predominately in this appeal are Plaintiff's lower back impairments which allegedly also affect his legs. In fact, at the hearing before the ALJ on October 13, 2009, Plaintiff claimed an inability to work because of his low back impairments. (Tr. 35). According to Plaintiff, he "has a couple of herniated discs and the nerve is touching those discs" and "[i]f the nerve in [his] back is aggravated [he] can't function, [his] legs don't function properly." (Tr. 33, 35).

It appears that Plaintiff's back problems began in February 2007, when he slipped on ice while carrying a ladder from a cable truck he used for work. (Tr. 35). After the slip-and-fall on ice, Plaintiff reported to an Urgent Care reporting a continuing pain in the low right side of his back, radiating down his right leg. (Tr. 237). A radiology report from an x-ray in February 2007 revealed "mild disc space narrowing at L4-5 and L5-S1[,]" with "mild facet arthritis at L5-S1." (Tr. 240). Plaintiff was diagnosed with acute lumbar strain, and possible herniated lumbar disc. (Tr. 237).

Follow up care with his primary care physician, Dr. Martin Schear, revealed pain with range of motion and spasm in the right buttock and hip area, straight leg raising was positive at 45 degrees with pain, and pain with flexion of the right hip. (Tr. 247). Upon Dr. Schear's recommendation, Plaintiff underwent an MRI of the lumbar spine in March 2007 which revealed mild concentric disc bulging at L2-3, mild disc bulging with no disc herniation or nerve root impingement at L3-4, moderate disc bulging and mild facet hypertrophy at L4-5, and small central disc protrusion at L5-S1. (Tr. 243). There was also a superimposed small right paracentral disc extrusion extending behind the body of L5, which impinged on the traversing right L5 nerve root. (Tr. 243). Dr. Schear recommended that Plaintiff see a neurosurgeon (Tr. 247), a recommendation that Plaintiff did not follow because he lost his health insurance. (Tr. 344).

In September 2007, Dr. Damon N. Danopulos examined Plaintiff. (Tr. 248). Dr. Danopulous noted the following with regard to Plaintiff's spine:

> Spine was painful by pressure at the lumbosacral area. Paravertebral muscles were tender by palpation, straight leg rising was positive at 40 degree level. Lumbar spine motions and toes and heel gait were denied due to pain. [Plaintiff] mentioned that he had an MRI which showed injury at L3-4 and L4-5. This MRI or any x-rays did not exist in his chart. The clinical impress was lumbosacral spine strain or sprain with paravertebral muscle tenderness or spacticity, responsibly [sic] also for the excess lumbosacral spine pain. The MRI of the lumbosacral spine has to be reviewed and if does not exist, lumbosacral spine x-rays are advised.

(Tr. 252). Dr. Danopulos concluded that Plaintiff's "ability to do any work related activities [are] restricted from his right knee arthritis plus his moderately severe lumbosacral spine pain, which had needed three epidural injections." (Tr. 253).

-5-

Dr. W. Jerry McCloud, a state agency physician, reviewed Plaintiff's file on September 11, 2007, and concluded that Plaintiff could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours per 8 hour workday; and sit for about 6 hours per 8 hour workday. (Tr. 259-66). Dr. McCloud also concluded that Plaintiff was limited in fingering/fine manipulation and that Plaintiff could occassionally use ladders/ropes/scaffolds. (Tr. 259-66). Dr. McCloud's opinion was affirmed by Dr. Gary Demuth on January 5, 2008. (Tr. 272).

In August 2008, Plaintiff was seen in the emergency department at the VA Medical Center for low back pain. (Tr. 321). He complained that his lower back pain was radiating "to both buttocks and posterior thighs and he [was] getting tingling numbness in [his] right leg." (Tr. 321). Notes from that visit reveal that Plaintiff walked "with slow deliberate gait[,]" had "palpable tenderness and spasm in lumbosacral region bilaterally[,]" and that range of motion in Plaintiff's lower back was "restricted secondary to pain." (Tr. 322). An x-ray of Plaintiff's lumbar spine revealed "mild lower lumbar degenerative changes." (Tr. 328).

Thereafter, in November 2008, Plaintiff began primary care at the VA Medical Center. (Tr. 294-296). In May 2009, Plaintiff reported continued low back pain, which radiated to his left leg at times and at other times to his right leg. (Tr. 275). A physical examination revealed "spinal tenderness along the thoracic lumbar and bil[ateral] lumbar muscle[s]." (Tr. 276).

In July 2009, Plaintiff underwent another MRI. (Tr. 340). That MRI revealed "a right central extruded disk herniation with slight caudal migration" at L2-3 with "mild disk space narrowing." (Tr. 340). Further, at L3-4, the MRI revealed "mild facet hypertrophy." (Tr. 340). At L4-5, the MRI revealed "broad-based posterior annular bulging . . . mild facet hypertrophy" resulting "in some lateral encroachment." (Tr. 340-41). At L5-S1, the MRI revealed "moderate facet arthrosis" and "a tiny external synovial cyst on the left." (Tr. 341).

In September 2009, Plaintiff had a neurological consult at the Neurology Consult Clinic "staffed with Dr. [Shailaja] Hari." (Tr. 344). At that time, Plaintiff complained of "radicular pain down his right leg" and "aching across the low back with muscle spasms at time." (Tr. 344-45). A review of Plaintiff's MRI resulted in a conclusion that Plaintiff suffered from "right/central disc herniation at L3, corresponding to patient's symptoms." (Tr. 346). Plaintiff was diagnosed with "[r]ight L3 radiculopathy secondary to disc herniation[.]" (Tr. 346). The physician noted that Plaintiff was "appropriate for fee-basis neurosurgical referral[.]" (Tr. 346).

Finally, Plaintiff was examined by Dr. Scott West, a neurosurgeon, on October 30, 2009, *i.e.*, seventeen days after the hearing before the ALJ. (Tr. 214-15). On that same date, Dr. West authored a report directed to Dr. Raghdaa Toban at the VA Medical Center. (Tr. 214-15). In that report, Dr. West concludes that Plaintiff's "primary problem [is] an extruded disc herniation at the L2-3 level on the right" with "lesser changes at

other levels" but that "most of [Plaintiff's] symptoms are coming from the large extruded disc fragment at the L2-3 level in the right." (Tr. 214-15).

Dr. West's report was not part of the administrative record considered by the ALJ in rendering her decision. Plaintiff submits that, at a minimum, this case should be remanded pursuant to sentence six of § 405(g)[1] for consideration of Dr. West's report as new and material evidence not submitted as part of the administrative record for good cause.

### III. ANALYSIS

This Court's function is to determine whether the record as a whole contains substantial evidence to support the ALJ's decision. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). This Court must also determine whether the ALJ applied the correct legal criteria. *Bowen*, 478 F.3d at 745-46.

Regarding the substantial evidence requirement, the ALJ's findings must be affirmed if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a mere scintilla, but only that much evidence required to prevent a directed

---

[1] Sentence six of 42 U.S.C. § 405(g) states in relevant part that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" A "sentence six" remand "for consideration of additional evidence is warranted only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir.2001)).

-8-

verdict." *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988) (citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).

The second judicial inquiry, reviewing the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Bowen*, 478 F.3d at 746. A reversal based on the ALJ's legal criteria may occur, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Id.* (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

In this case, Plaintiff first argues that the ALJ erred in determining the extent of Plaintiff's pain and Plaintiff's credibility. To support this asserted error, Plaintiff cites to the analytical framework set forth by the Sixth Circuit in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007), which states that "[w]here the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762 (6th Cir.2001); *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir.1994)).

The two-part analysis is as follows:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Id.* Pursuant to 20 C.F.R. § 416.929 and SSR 96-7p, upon determining that "an underlying physical or mental impairment" exists "that could reasonably be expected to produce the individual's pain or other symptoms[,]" the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *See* SSR 96-7p.

Where a claimant's subjective complaints concerning "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must then determine the claimant's credibility "based on a consideration of the entire case record." *See* SSR 96-7p. In considering the entire case record, 20 C.F.R. § 416.929 and SSR 96-7p also require consideration of the following:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p; *see also* 20 C.F.R. § 416.929(c)(3).

A reviewing Court must "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). Nevertheless, in setting forth a credibility finding, the ALJ's determination "cannot be based on an intangible or intuitive notion about an individual's credibility[,]" and instead, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *See* SSR 96-7p. In fact, the ALJ must set forth "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Here, Plaintiff contends that the ALJ failed to fully consider whether Plaintiff has a medically determinable impairment that could reasonably be expected to produce Plaintiff's pain. Specifically, Plaintiff contends that, in considering his low back impairment, the ALJ only referenced a 2007 MRI which found a herniated lumbar disc at L4-5 with some contact with the L5 nerve root, and that the ALJ failed to consider whether objective findings from a 2009 MRI "could reasonably cause Mr. Johnson's pain." (Tr. 18).

Defendant does not contest the fact that the ALJ, in her decision, only referenced the clinical impressions from the 2007 MRI, *i.e.*, that Plaintiff had a "[s]mall paracentral disc extrusion at L4-L5, impinging on the traversing right L5 nerve root" (Tr. 244), and that "the ALJ did not explicitly discuss the 2009 MRI." (Doc. 9). In minimizing the ALJ's apparent failure to consider the 2009 MRI, Defendant argues that "Plaintiff fails to explain how this evidence was any different than the 2007 MRI that the ALJ repeatedly cited[,]" and seemingly asserts that the 2009 MRI findings do not differ from the 2007 MRI. (*Id.*)

From the Court's perspective, and as argued by Plaintiff in his reply, the difference in the two MRIs appears evident upon review of the records. (Tr. 243, 240). As Plaintiff points out, the 2007 MRI found "mild concentric disc bulging" at L2-3 with "[n]o disc herniation . . . seen." (Tr. 243). However, in 2009, an MRI of Plaintiff's spine revealed "right central extruded disk herniation with slight caudal migration" and "mild disk space narrowing" at L2-3. (Tr. 340). The 2009 impression was "[r]ight central extruded L2-3 disk herniation." (Tr. 341). A neurology consult in September 2009 concluded that findings from Plaintiff's MRI, *i.e.*, "right/central disc herniation at L3," corresponded "to patient's symptoms." (Tr. 346). It is not entirely clear why the ALJ only referenced the 2007 MRI findings and made no specific reference to the herniation at L2-3 found as a

result of the 2009 MRI.[2]

The Court concludes that the ALJ's finding that only some of Plaintiff's alleged symptoms could reasonably be expected as a result of Plaintiff's medically determinable impairments was erroneous because it appears that the ALJ did not fully consider all of the objective medical evidence in the record, namely the 2009 MRI findings. (Tr. 18). Further, SSR 96-7p instructs that, "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence." Again, as Defendant apparently concedes, the ALJ did not explicitly consider the 2009 MRI," and in fact, no where in the decision does the ALJ reference Plaintiff's disc herniation at L2-3 or the conclusion that such herniation at L2-3 corresponds to Plaintiff's symptoms. (Tr. 346). Failure to consider the 2009 MRI is contrary to SSR 96-7p and 20 C.F.R. § 416.929.

Accordingly, the Court concludes that Plaintiff's first assignment of error is well-taken.[3] In finding that the ALJ's determination must be reversed, the Court must decide

---

[2] The Court notes that records from a VA Medical Center, including the records of the 2009 MRI, were not submitted to the Commissioner until the day of the administrative hearing, *i.e.*, October 13, 2009. The Court also notes, however, that the ALJ did generally cite to these records in the decision to make the conclusory statement that "[t]reatment records from the VA Medical Center document essentially the same physical findings noted above[,]" and relatedly, that "clinical examinations consistently reveal normal sensation, reflexes, and muscle strength, but do show positive straight leg testing." (Tr. 16, 18).

[3] Plaintiff additionally takes issue with the ALJ's alleged selective reliance on clinical findings concerning reflex, sensation or motor deficit and failure to note and consider findings in the records regarding Plaintiff's antalgic gait, muscle spasm, restricted range of motion and tenderness found in lumbar and sacral spine in assessing Plaintiff's credibility. (Tr. 271, 276, 322, 346). As set forth in SSR 96–7p, "[t]he examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from, or be associated with, the symptom of pain. When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." Further, "[a] report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility." SSR 96-7p; *see also Pickett v. Astrue*, No. 3:10-cv-177, 2011 WL 1626559 (S.D. Ohio Apr. 28, 2011). Because the Court concludes that the ALJ's failure to consider the 2009 MRI is dispositive of Plaintiff's first assignment of error, the Court does not reach a conclusion on this purported error, or error regarding the ALJ's assessment of Plaintiff's daily activities.

whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. When the ALJ "misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and [the ALJ's] decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 175-76 (6th Cir. 1994).

A sentence four remand for further proceedings is appropriate in this case. On remand, the ALJ must evaluate Plaintiff's pain and credibility in light of all medical evidence, including the records and report of Dr. Scott West, and any other appropriate new evidence.[4] Additionally, the ALJ may seek additional, updated, medical opinions needed to assist in rendering a final decision.

## IV. CONCLUSION

Accordingly, for all of the foregoing reasons, the Court **ORDERS** that: (1) the decision of the Commissioner be **REVERSED**; (2) this matter is **REMANDED** to the ALJ under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This case is hereby terminated on the docket of this Court.

---

[4] Dr. Scott's report postdates the administrative hearing but predates the ALJ's decision by approximately 5 days. At the administrative hearing on October 13, 2009, Plaintiff requested and the ALJ ordered that the administrative record be held open for 30 days so that Plaintiff could submit certain records, including records from a scheduled appointment with a neurosurgeon. Despite granting Plaintiff's request to hold the record open for 30 days, the ALJ issued her decision before expiration of the 30 day period. As a result, Plaintiff's opportunity to submit records and the anticipated report was cut short.

**IT IS SO ORDERED.**

Date: 11/22/11

Timothy S. Black
United States District Judge